333 So.2d 259 (1976)
John DESHOTELS
v.
STATEWIDE TRAILER SALES and J. G. Duplantis.
No. 10723.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
Keith M. Whipple, Houma, for appellant.
J. Winston Ardoin, Eunice, for appellees.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
EDWARDS, Judge.
Plaintiff Deshotels sues defendants Statewide Trailer Sales, Inc. and J. G. Duplantis for damages to plaintiff resulting from the alleged unlawful taking by defendants of plaintiff's house trailer. The trial court rendered judgment in favor of plaintiff and defendants appeal.
Defendants-appellants specify the following errors:
(1) The trial court erred in holding the defendants liable in tort;
(2) The trial court committed manifest error in its evaluation of credibility and findings of fact;
(3) The trial court's award of quantum was excessive.
FACTS:
In June of 1973 John Deshotel was an employee of Statewide Trailer Sales, Inc. (Statewide). His position with Statewide at that time was lot manager of Statewide's Morgan City lot. The year before, on May 4, 1972, Deshotel had purchased from one Billy Bishop a Sparton House Trailer bearing serial number 2740. The evidence adduced at trial leaves no question that Deshotel was the owner of the Sparton trailer at all times relevant herein.
*260 Art Wiggins began working for Statewide in June of 1973 in the position of assistant to J. G. Duplantis. (J. G. Duplantis' relationship to Statewide was characterized in the record variously as stockholder, secretary-treasurer, general manager, owner and "boss man.") On or about June 18, 1973, shortly after he began work, Art Wiggins went to see Deshotel to terminate Deshotel's employment with Statewide. This meeting took place at the Morgan City lot which Deshotel managed. During the discussion Wiggins noticed the Sparton trailer and asked whose it was. Deshotel informed him that it was his, though he could not at that time produce title. After some argument concerning his dismissal, Deshotel agreed to leave. The trailer was moved by Deshotel within two or three days.
Deshotel moved the trailer from the Morgn City lot to a lot owned by Anthony Resignole, from whom he rented a space for the trailer. Although the testimony is conflicting, this was done obviously just a short time before June 22, 1973. On that date Resignole decided he didn't want the trailer on his lot any longer. After trying without success to locate Deshotel, Resignole went over to the Statewide lot, thinking Deshotel was still employed there. He spoke with Art Wiggins, the gist of the conversation being that he, Resignole, wanted the trailer moved off his lot.
There is some question whether Resignole conditioned his request and permission on Statewide's owning the trailer. However, Wiggins then contacted Duplantis in Houma and discussed with him what action to take. During this conversation Wiggins told Duplantis that Deshotel had claimed ownership of the trailer. Duplantis testified that, although he did not know who owned the trailer, he told Wiggins to have it moved to the Houma lot (Statewide's). We note also that Duplantis testified to some disagreements that he and Deshotel had been having for several years, some resulting in lawsuits.
Following this conversation between Duplantis and Wiggins, the latter gave instructions to employees of Statewide to move the trailer to the Houma lot. This was done that day: Brian Carmack, an employee of Statewide, towed the trailer with a Statewide truck to Houma. When Deshotel discovered that the trailer had been moved, he made demand on Wiggins for its return. He was told that he could not recover the trailer without showing a bill of sale. This suit followed.
(1) Liability in Tort
While recovery for damage caused through the fault of another is based in Louisiana on Civil Code Article 2315, our courts have long employed common law concepts in determining liability for tortious conversion of property. Edward Levy Metals, Inc. v. New Orleans Public Belt R. R., 148 So.2d 580 (La.1963); Rosenthral v. Baer, 18 La.Ann. 573 (1866); Lincecum v. Smith, 287 So.2d 625 (La.App.3rd Cir. 1973), writ refused, 290 So.2d 904 (La.1974).
Conversion has been defined as "a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein." Lincecum, supra., and authorities cited therein.
Furthermore, it is the act itself, rather than the intentionally or negligently wrongful manner thereof, that constitutes the conversion. Our brothers of the Third Circuit in Lincecum, supra., cited with approval on this point Prosser's Handbook of the Law of Torts 83-4 (3rd Ed. 1964), and we do likewise:
The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights ... Persons ... exercise acts of ownership over them at *261 their peril, and must take the risk that there is no lawful justification for their acts.
The evidence adduced herein clearly shows that there was not only a taking of plaintiff's trailer by defendants, but also a refusal to return it on plaintiff's demand. Defendants cannot justify their actions by the plaintiff's failure to produce to their satisfaction proof of ownership. Defendants acted at their peril; they were wrong and must therefore suffer the consequences of their actions.
(2) Trial Court's Findings of Fact
Defendants complain that the trial court committed manifest error in its evaluation of credibility and findings of fact. After a careful perusal of the record, this Court finds ample basis in the testimony to support the trial court's judgment imposing liability on defendants. Relative to testimony, we cannot say that the trial court erred in finding it credible. Because of the trial court's ability to see and hear the witnesses, great weight is accorded its evaluations of credibility. Canter v. Koehring, 283 So.2d 716 (La.1973).
(3) Quantum
Defendants principally contend that the trial court erred in awarding as damages the value of the trailer, citing Marcel v. Denton, 195 So.2d 163 (La.App.1st Cir. 1967). That case states:
If [the goods are] not sold to third persons, the owner is entitled to the return of the property together with such damages as he may have sustained and can establish with that certainty required by law. Hernandez v. Harson, 237 La. 389, 111 So.2d 320.
In the Hernandez case, cited in Marcel, the plaintiff had asked in petition to have the possession restored. However, the jurisprudence is firm that the plaintiff may elect to petition for the return of his property or for the value thereof, the latter regardless of whether it has been sold. Reynolds v. Reiss, 145 La. 155, 81 So. 884 (1919); Vercher v. Toda Enterprises, Inc., 216 So.2d 318 (La.App.3rd Cir. 1968).
The trial court further awarded $1,000.00 general damages. We do not say that this award was an abuse of his discretion. See Vercher, supra, and Lafleur v. Sylvester, 135 So.2d 91 (La.App.3rd Cir. 1961).
The judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.