443 So.2d 690 (1983)
Helen C. NATHANS
v.
Frank L. VUCI, et al.
No. 83 CA 0110.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*692 Dennis C. Weber, McPherson, Weber, Zainey & Booth, Steve M. Marks, Baton Rouge, for plaintiff-appellant Helen C. Nathans.
Thomas F. Wade, Asst. Atty. Gen., Baton Rouge, for defendant-appellee State of La.
David L. Dawson, Jr., Baton Rouge, for defendant-appellee Frank L. Vuci.
Emile C. Rolfs, III, Durerett, Hardin, Hunter, Damerion & Fritchie, Baton Rouge, for defendants-appellees Harold Tridico, James M. Dupuy and The North River Ins. Co.
Before PONDER, WATKINS and CARTER, JJ.
CARTER, Judge.
This is an appeal by plaintiff, Helen Nathans, from a summary judgment granted in favor of one of the defendants, namely, Frank L. Vuci.
In November, 1978, plaintiff filed suit against Frank L. Vuci, Barbara Bishop Lillie, Richard C. Bishop, Kenneth Kain, James M. Dupuy, an unnamed Ascension Parish Sheriff's deputy, the Sheriff of Ascension Parish, and the State of Louisiana alleging that these defendants, as a result of a wrongful eviction, caused damage to her person and her property.
The specific allegations of her petition, which address Vuci's liability, provide that:
"12.
Defendant, Frank L. Vuci and Barbara Bishop Lillie, wrongfully, negligently, willfully and maliciously caused petitioner to be forcibly evicted from the leased premises on February 24, 1978, after accepting petitioner's tender of rental payment for February, 1978. By holding themselves out to be the owner/lessor of the premises, defendants, Frank L. Vuci and Barbara Bishop Lillie, are answerable for the damages caused to petitioner by the unlawful eviction. La.Civil Code Article 2696.
* * * * * *
16.
Petitioner, Helen C. Nathans, brings this action pursuant to all applicable Louisiana law, including but not limited to, La.Civil Code Articles 2315, 2320, and 2696."
Defendant Vuci filed a motion for summary judgment and attached various documents and depositions. Attached to the motion was a copy of the Court of Appeal decision, which held that the lease had expired at the end of the primary term and that from 1969 to the time of filing of the eviction proceeding, lessee's occupancy of the premises was under a reconduction of the lease on a month-to-month basis. A copy of the Act of Sale, dated November 16, 1977, wherein Vuci sold all of his right, title, interest in and to the property in question to Barbara Bishop Lillie and Richard C. Bishop, was also attached. The attached depositions established that at the time of the eviction Frank Vuci did not own the leased premises. Plaintiff filed no affidavits, depositions, documents, or other evidence in opposition to defendant's motion and accompanying support thereof.
The trial court found that, based upon the pleadings, depositions, and attached documents, there remained no genuine issue of material fact with reference to Vuci's liability for damages resulting from the eviction of Nathans. The only issue presented is whether the trial court properly *693 granted the motion for summary judgment.

BACKGROUND
In 1968, Vuci leased to plaintiff's husband, now deceased, a building and property which became known as George's Villa. The lease was for a primary term of one year with two options to renew, neither of which was ever exercised. See Vuci v. Nathans, 357 So.2d 561 (La.App. 1st Cir. 1978).
On August 30, 1977, plaintiff was notified to vacate the leased premises by September 30, 1977, which plaintiff refused to do. Eviction proceedings were instituted, and the trial court ruled that plaintiff's lease had expired and that plaintiff's occupancy thereafter had been under a reconduction of the expired lease and ordered that she vacate the premises. Plaintiff appealed suspensively from this judgment. While the appeal was pending, Mrs. Nathans remained in possession of the leased premises and continued to pay rent through February, 1978.
In November, 1977, after the trial court judgment but before the judgment was rendered on appeal, Vuci sold the leased premises occupied by Nathans to Barbara Bishop Lillie and Richard C. Bishop.
On February 21, 1978, this court affirmed the judgment of the trial court evicting Mrs. Nathans and ordered her to vacate and deliver possession of the leased premises.
On February 24, 1978, Ascension Parish Sheriff's deputies forcibly evicted Nathans. It was during this eviction that Mrs. Nathans was allegedly injured, and it is these injuries which form the basis of the present suit for damages against Vuci and the other defendants.

MOTION FOR SUMMARY JUDGMENT
Plaintiff contends that the trial court erred in granting summary judgment in favor of defendant Vuci. Plaintiff reasons that defendant Vuci's acceptance of plaintiff's advance rent check for February, 1978, was tantamount to reconduction of the expired lease on a monthly basis and that Vuci is answerable for the damages she sustained as a result of her forcible and wrongful eviction under LSA-C.C. art. 2696. Plaintiff also contends that enforcement of the Court of Appeal's judgment was prematurely made, rendering defendant Vuci liable to her for abuse of process. And, finally, plaintiff contends that defendant Vuci wrongfully converted her property.
A. Reconduction of the lease on a month-to-month basis
Plaintiff contends that Vuci's acceptance of the rent check for February, 1978, constitutes a reconduction of her expired lease and that because she was evicted prior to the end of the month for which she had paid rent, Vuci is answerable for damages under LSA-C.C. art. 2696.
In support of her contention that acceptance of rent for February, 1978, reconducted the lease, plaintiff cites Flores v. Gondolier, Ltd., 375 So.2d 400 (La.App. 3rd Cir.1979), which held that acceptance of rental payments after a notice to vacate has been given vitiates the notice and maintains the tenant's possession.
Plaintiff's reliance on Flores, however, is misplaced. Clearly, the summary action of eviction is based on the required notice to vacate, and the acceptance of rent after that notice, but before a judgment of eviction, vitiates the notice and prevents the lessor from obtaining such a judgment. Passalaqua v. Mendez, 388 So.2d 1172 (La.App. 4th Cir.1980). In the case sub judice, the rent was accepted after a judgment of eviction had been rendered by the trial court. Therefore, the acceptance of the rent did not vitiate the judgment.
The Supreme Court addressed the issue of reconduction in Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574, 576 (La.1970) in the following manner:

*694 "The civil law has expressly recognized that occupancy of premises by a lessee after the expiration of a fixed-term lease constitutes reconduction. The Code Napoleon recognized under Articles 1738 and 1759 that a lessee's continued possession after the expiration of a lease with a fixed term operated as a continuation of the lease but for a new term of duration according to the custom of the place. Under such a reconducted lease either party could give notice of termination of the lease upon observing the delays established ` * * * by the custom of the place'. C.N. Arts. 1736, 1759.
Under our Civil Code provisions based on these articles of the Code Napoleon, legal reconduction takes place when a fixed-term lease expires and the lessee without opposition continues to occupy the premises for more than a week. The reconducted lease is actually a continuation of the lease under the same terms and conditions except that the fixed term or period of duration in the old lease is voided and the reconducted lease is considered to be by the month. La.Civ.Code Arts. 2689, 2685, 2686." (footnote omitted) (emphasis added).
From October, 1968, until September, 1969, plaintiff had a written lease, but after the primary term expired plaintiff occupied the premises on a month-to-month basis under a reconducted lease. However, on August 30, 1977, plaintiff was notified by Vuci that she had to vacate the premises by September 30, 1977. The eviction proceeding which followed resulted in Mrs. Nathans' eviction, a judgment from which she perfected a suspensive appeal. Therefore, Mrs. Nathans remained on the premises under the protection of the law, but against the wishes of Vuci and the subsequent owners. The lawful owner was entitled to collect rent for the days he was legally obligated to allow Nathans to remain on the premises. The lessee was not occupying the premises without opposition, and a reconduction of the lease did not occur.
Because we find that Mrs. Nathans did not occupy the premises on February 24, 1978, under a reconducted lease, we do not find that she is entitled to damages which resulted from an interruption of the lease.
B. Abuse of Process
Plaintiff contends that defendant Vuci is liable to her for abuse of process. Plaintiff relies on her allegation that a lease existed at the time of her eviction to support this contention. Although we have previously found that plaintiff did not have a lease, we will address plaintiff's contention that Vuci is liable for the tort of abuse of process.
In Succession of Cutrer v. Curtis, 341 So.2d 1209 (La.App. 1st Cir.1976), writ denied 343 So.2d 201 (La.1977), the court listed the essential elements of a cause of action for abuse of process as follows at pp. 1213, 1214:
"... (1) the existence of an ulterior purpose; (2) a wilful act in the use of the process not proper in the regular prosecution of the proceeding." (Citations omitted)
The Second Circuit Court of Appeal in Weldon v. Republic Bank, 414 So.2d 1361, 1365 (La.App. 2nd Cir.1982) discussed the elements of abuse of process as follows:
In 1 Am.Jur.2d Abuse of Process we find the following explanation with regard to the elements and requirements of abuse of process:
§ 4
... While the existence of an ulterior motive may, perhaps, be inferred from the fact that the process has been misused or misapplied, the reverse is not true, for if the act of the prosecutor is in itself regular, the motive, ulterior or otherwise, is immaterial.
An ulterior motive or a bad intention in using the process is not alone sufficient, the bad intent must have culminated in the abuse, for it is the latter which is the gist of the action. An action for abuse of process cannot be maintained where the process was employed to perform no other function than that intended *695 by law. Thus the mere issuance of process is not actionable as an abuse of process; there must be use of the process, and that use must of itself be without the scope of the process, and hence improper.... (Emphasis added.)
* * * * * *
§ 12
But there must be some "abuse" of the writ or process issued, or intent to accomplish a result not lawfully or properly attainable. Even if the moving party had an ulterior purpose in making use of the writ, if there was no "abuse" there is no cause of action.
* * * * * *
§ 13
... If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action...
In 72 C.J.S. Process § 120, at page 1192, essential elements of abuse of process are explained as follows:
A legal and legitimate use of process, to effect the result which such process is designed by law to accomplish, is not an abuse thereof. Regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice.
Under this interpretation of the law of abuse of process, we cannot say that the trial court, even in viewing the evidence in the light most favorable to plaintiff, was erroneous in granting the summary judgment to Vuci. Vascocu v. Singletary, 404 So.2d 301 (La.App. 3rd Cir.1981), reversed on other grounds, writ denied 409 So.2d 676 (La.1981). Plaintiff does not allege that any actions taken by defendant Vuci were not in the regular course of legal process nor does she allege that Vuci attempted to effect a result not designed by law to be accomplished by the process. The actions taken by Vuci in evicting Nathans were clearly within the scope of the eviction process. The fact that the actual eviction may have been prematurely effected (prior to a final judgment) would not make Vuci liable to abuse of process.
This assignment is without merit.
C. Tortious Conversion
Plaintiff further contends that defendant Vuci wrongfully converted valuable personal and business property during the course of the eviction.
Conversion is a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein. Deshotels v. Statewide Trailer Sales, 333 So.2d 259 (La. App. 1st Cir.1976). It is the act itself, rather than the intentional or negligent manner thereof, that constitutes conversion. Deshotels, supra.
Clearly, conversion contemplates the wrongful taking or the wrongful detention. Oge v. Resolute Insurance Company, 217 So.2d 738 (La.App. 3rd Cir.1969).
In her petition, plaintiff alleged that:

"13.
As a result of the wrongful eviction, petitioner, Helen C. Nathans, suffered grave, serious and permanent physical injuries, great mental anguish, the loss of her business, the loss of valuable personal property, and the loss of valuable business property."
Although plaintiff makes this allegation in her petition, she alleges no particular person who allegedly committed these acts. She argues in brief, however, that these allegations were, at lease partially, addressed to wrongful acts of conversion committed by Vuci. Plaintiff reasons that Vuci was responsible for the taking of her property in that he identified it as property which was conveyed in the Act of Sale passed between himself and Mrs. Lillie and Mr. Bishop. She contends that his act of pointing out the property, which caused others to unlawfully take her belongings, constituted conversion.
Plaintiff admitted that she never personally discussed ownership of these items *696 with Vuci. Furthermore, plaintiff's petition alleges that "defendant, Kenneth Cain, and other unknown individuals" were responsible for the loss and destruction of her personal and business property, and there is no evidence that Vuci converted any assets belonging to plaintiff.
Plaintiff contends that the act of taking need not be performed by the alleged wrongdoer and that the act of conversion need not be associated with the acquisition of the property by the wrongdoer. Plaintiff cites South Texas Lloyds v. Jones, 273 So.2d 853 (La.App. 2d Cir.1973) in support of this proposition.
Plaintiff's reliance on this case, however, is misplaced. Clearly, South Texas Lloyds v. Jones, supra, based its holding a third person liable for the act of conversion committed by another on LSA-C.C. art. 2318, which holds parents vicariously liable for the tortious acts of their minor children. This case cannot be used to justify holding Vuci responsible for tortious acts allegedly committed by others.
For these reasons, we find that this assignment of error lacks merit.
D. Return of Advance Rent Not Due
In brief plaintiff contends that the trial court erred in granting summary judgment when there had been no adjudication concerning the return of rent paid in advance. Plaintiff reasons that she had paid rent for the entire month of February, but was evicted prior to the end of the month. She, therefore, contends she is entitled to a refund of a portion of rent paid.
We have reviewed plaintiff's petition and find that plaintiff did not sue for return of advance rent not due. Therefore, this assignment lacks merit.

CONCLUSION
It is well settled that a summary judgment should be granted only if there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225 (La.1979); LSA-C.C.P. art. 966. Under LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials in his pleadings when a motion for summary judgment is made and supported by sufficient evidence.
Stated another way, on a motion for summary judgment, it must first be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact. If they are not sufficient, the motion for summary judgment should be denied. Only if they are sufficient does the burden shift to the opposing party to present evidence showing that a material fact is still at issue; only at this point may he no longer rest on the allegations contained in his pleadings. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
In certain instances, the failure of an adverse party to file opposing evidence does not automatically entitle the moving party to summary judgment. Jewell v. Thompson, 386 So.2d 689 (La.App. 3rd Cir. 1980), writ denied, 393 So.2d 746 (La.1980); Acme Refrig. of Baton Rouge v. Caljoan, Inc., 346 So.2d 743 (La.App. 1st Cir.1977). However, if the moving party has established both that there is no genuine issue as to material fact and that he is entitled to judgment as a matter of law, it is incumbent upon the adverse party to come forward with specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967.
In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Chaisson, supra; Hercules, supra.
In the present case, the trial court correctly determined that all material issues of fact were resolved and found that the evidence in support of the motion for summary judgment was sufficient. Therefore, it became necessary for the adverse party, Nathans, to file controverting evidence to establish that there existed a genuine issue of material fact. This plaintiff did not do, *697 and, based on the record, reasonable minds would inevitably conclude that mover, Vuci, is entitled to judgment as a matter of law.
For the above reasons, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.